All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon. I'm Judge Gould, and I welcome everyone to the courtroom. I'm delighted to be sitting with Judge Clifton and with Judge Miller. And all three of us are very appreciative of advocates showing up in the time of pandemic and giving us the benefit of their thoughts and advocacy. Without further ado, we can proceed to the first case on our argument calendar, which is Nickler v. County of Clark. For the appellant, we have Mr. Kemp. I've got that right in for the appellees. We have Ms. Grahams and Mr. Gilmer. Yes, good morning. Good afternoon, Your Honor. Randall Gilmer and Cheryl Grahams on behalf of the appellees. Okay, great. Okay, so we should... We'll let Mr. Kemp get started. Let me just say we have a very full docket today with more than two hours of argument scheduled. And so if it's possible for advocates to stay with me a lot of time, the court will appreciate it. However, if anyone needs a couple extra minutes, I'm going to give it to them in any event if they ask. So we'll proceed now with Mr. Kemp. And this case is set for ten minutes per side. So if you want to make a rebuttal argument, you can make an effort to stop while some time is still left on the clock. Very well, thank you. Good afternoon, Your Honors. May it please the court, I'm James Kemp on behalf of the appellant, Jacqueline Nickler. And I would like to reserve two minutes for rebuttal, if possible. We're here on two orders from the district court and the judgment dismissing Ms. Nickler's case. The first order was dismissing her case as moot after this case had remanded the matter for further proceedings on one of her claims, specifically injunctive relief on her unreasonable search claim. And then the second order was the denial of Ms. Nickler's motion to amend her complaint. I'd like to start with the mootness aspect of it. Under the voluntary cessation doctrine, the case is not moot, because there is a reasonable chance that the appellees could resume the previous unreasonable searches that they had begun. The cases generally say that in order to get around this exception to the mootness doctrine under the voluntary cessation doctrine, that there has to be some change in the law, like a change in statute, a change in a regulation, an official policy change, or something like that. What we have here is merely an executive action where they decide to stop searching her every day after almost four years of doing so. There is nothing to stop them from doing that. In fact, they had expressed... What reason would they have to resume? Is your client planning to do something that would cause them to want to do this to her again? No, Your Honor, but again, the doctrine appears to say that they have a heavy burden to show that it's impossible... I don't know that the burden is nearly as heavy as you're trying to describe it. It seems to be a highly unlikely set of circumstances to resume. Well, I'm just taking the language from the cases. It says it's a heavy burden on them to show that it would be impossible, and they talk about impossibility being these official... Okay, give me a citation to support the proposition that it has to be impossible. Well, the cases that we cite, Your Honor, think about it being a heavy burden. I'm asking for just one case that uses the term impossible as the standard. I don't recall ever seeing impossible set as the standard. You're right, Your Honor. Okay, so don't tell us it has to be impossible because it doesn't. What does it have to be? I apologize, Your Honor. It's a heavy burden to show that there's no real reasonable possibility that it would resume. Okay, so I go back to my question. What makes it a reasonable possibility to resume? Is your client going to do something that's going to prompt this kind of action again? To my knowledge, Your Honor, she has no plans to do that. Well, then there's not a reasonable possibility, is there? I think that there is a reasonable possibility because they did this to her for four years without having any good reason to do it in the first place. Well, they thought they had a good reason based on something she said. We will accept the proposition that they misunderstood what she said. But she did say something that you would expect an office supervisor to pay some attention to, understood the way they understood it. Okay, the misunderstanding's been cleared up. What makes anybody think a whole thing's going to happen again? Well, again, Your Honor, at the end of January of 2013, she went through a fitness for duty evaluation, was completely cleared by a doctor of their choosing who said she's not a threat, there's not a problem. Yet they continued to unreasonably search her for over three years until November 30th of 2016. So we know your argument, but my question is what makes anybody think that there's a reasonable probability that it's going to happen again? And I've got to say, I haven't seen anything in your brief and haven't heard anything from you today that suggests that, yeah, this is something, there's a pretty decent chance that it might happen again. Well, and again, to get into discovery and documents, there is a letter that said that they, not a letter, but there was some discussions that were had at a document that was presented that indicated that they would do this again, if they just, on a whim, if they wanted to. And that, I think, is the issue. Okay, can you give me a record reference so I can take a look at that? Yes. It's... I can get it for you. Just bear with me. All right. It's... Okay. It's the excerpts of record 54 through 57 is the document, and it's at paragraph 6 of that document, where it said they are free to re-engage in the practice if they felt like and would consider themselves to continue to be free to do so. That was in a... That's a declaration from your client, isn't it? But that's what, yeah, well, that's what she was told. But that is based on a settlement discussion, a document that had to do with settlement. And can you... Which paragraph again are you... Yeah. Are you referring, is this on page 57, that defendants will, on a whim, reinstate their illegal treatment of me? That's what she was told, yes. And it was backed up by a document that was presented to her as a proposed settlement agreement with her prior counsel. And I don't know if there's a... The particular reference to whim is actually your client's statement that that's something she's worried about. The preceding paragraph, which I understand perhaps the document can't be attached because it was part of settlement negotiations, really doesn't seem to suggest that anything other than maybe seven years ago, when the parties were still battling and your client was being excluded, that even in the context of settlement, they wanted to make it clear that they could, if they thought appropriate, resume this treatment. That's a long way from where we are now, suggesting that in 2021, whoever is responsible, and I don't even know if it's the same people at the county center, would do take this somewhat exceptional action again. And so the notion there's a reasonable probability of this situation reoccurring doesn't really seem to justify injunctive relief, which is all you're seeking here. I mean, I frankly can't imagine a court entering an injunction in a context like we have in front of us. So I go back to the question, why isn't this moot? Well, it's not moot because it is possible that they could do this. And they've told my client that they would do it, Your Honor. When did they tell your client? Any time more recent than August of 2014? No, not that I'm aware of. That was the time frame in which they did that. And the case has been dragging on since then. And they did continue to do it until November 30th of 2016. And then they just stopped their own accord. So now it's been more, we're going on, it's like 16, four and a half years, where there has been nothing for which injunctive relief could apply. So we've had four and a half years of sufficient peace. Again, I'm hard pressed to figure out why this case isn't moot. Your Honor, all I can tell you is that under the voluntary cessation doctrine, it's our contention that it's not moot, that the exception to the mootness doctrine applies, because there is nothing that prevents them from doing that. And they've said before that they very well would if they wanted to. Counsel, Judge Gould, if I may interject, I think we have your argument in mind, but you're down to about a minute now. If you want to make rebuttal, we should pause and let you keep some powder dry for rebuttal. Okay, Your Honor, I didn't get a chance to address our amendment. I guess it's in the briefs, so I will reserve the rest of my time for rebuttal. Is there something you can address in a minute? And I'll give you an extra minute for rebuttal. Just briefly, in this case, there was a failure to permit her to amend. Twice now, the district court judge has dismissed the case without giving her an opportunity to amend to correct any perceived deficiencies in the pleading. And in the first dismissal, that's exactly what it was. It was a dismissal without prejudice because of perceived pleading insufficiency. And so she should have the opportunity under the cases that say you should have the opportunity to correct it if it's a 12B6 dismissal based on pleading insufficiency. And so she should have been granted that opportunity, and she should still be granted that opportunity under Rule 15A2, which would relate back to the 2014 filing of the complaint for her First Amendment defamation, intentional interference with her respective economic advantage and civil conspiracy claims. The law says she should get that chance, and she should have that. Thank you. Okay, Mr. Kemp. Thanks for your argument. Your time's used up, but for planning purposes, I'll give you a minute for rebuttal in any event. Now we'll hear from, I guess we have Mr. Gilmer and Ms. Grahams. And who's on first? Good afternoon, Your Honors. Randall Gilmer on behalf of Defendant Grierson. With me in the same room here is Cheryl Grahams, And we initially had planned to split argument. However, after hearing the court's inquiry to Mr. Kemp, with Ms. Grahams' permission, I am going to take the bulk of that argument. Of course, if there's something the court has specific with regard to Defendant Lamouran or Clark County, I'll reserve time for her to answer the court's questions in that respect. With the court's permission, that is how we will proceed. Thank you very much. And I'd like to, before I get right into my prepared remarks here, I'd like to jump in with the question that Judge Clifton asked Mr. Kemp with regard to the mootness claim. And I think that is the heart of what we are here before this court today for the fourth time. This is the fourth argument regarding these issues. The third in this particular case, and there was also a second argument, or there was an argument in the companion case as well. And a couple points I'd like to point out on that is it's highly unlikely that this incident would ever occur again because of the very unique factual circumstances associated with the time frame in which Ms. Nickler made the statement. And I think it's important to point out too that there's no dispute really here as to what the statement was. The statement was, no wonder like crap, I'll use the euphemism there, like Friday happens. The dispute is what that statement was meant to address. Ms. Nickler alleges that she was referring to an employee that left work early on the Friday before, whereas the defendants in this matter were concerned that the statement may have something to do with the Sandy Hook school shooting massacre that occurred the Friday before. And the concern here, you have to take into account the fact that we have defendants who are responsible for protecting the safety and security of hundreds of people on a daily basis and perhaps on some days thousands of people. It's the Regional Justice Center for Clark County, Nevada. It holds the Justice Courts as well as the Judicial District Court, the eight Judicial District Courts, all the judges, their staff, their employees, and all of the public that is coming in. This isn't a situation where people tasked with safety and security can take such issues lightly. Obviously, if they did not do so and a tragedy were to occur, that would be very problematic and a very big tragedy that they wish to prevent. So everything that the defendants did here was specific with their task to ensure safety and security of individuals. This also isn't. So I think that that is very important factual context that we need to set apart with regard to the purpose of this. And I'd also like to address the second point with regard to the issue as to not only factually is it highly unlikely that this would ever occur again based upon the circumstances that occurred at the time that the statement was made, but there has actually been a change of law here. And that is the fact that in October of 2018, when this court ruled and remanded this case for the sole purpose of injunctive relief, the court made clear in that October 18 order, and actually they made it clear in the August order prior to the rehearing where they granted qualified immunity, that prior to taking an employee's badge privileges away in these circumstances, there, because of the fact that they would be treated differently than other employees, you have to do a Fourth Amendment analysis. Prior to that, as this court ruled in the October 28 opinion, there wasn't case law that put defendants on clear notice that the Fourth Amendment applied in these circumstances. And they believe that because it was a public building, their administrative searches occurred for people who come in as members of the public on a daily basis, that subjecting Ms. Nickler to that search would not implicate the Fourth Amendment in this context. This court made clear when they remanded for the injunctive relief issue solely that the Fourth Amendment does apply. So there has been a change of law, and that is the fact that the defendants now, public employees who work for a court are on notice that they have to consider the Fourth Amendment before taking further actions in the future if this highly unlikely incident were to occur again. So in that respect, I would say there has been a change in law, as well as the highly, highly unlikely factual circumstance that is not likely to occur again in the future. Is there anything, may I ask, is there anything in the record about how frequently employee badge privileges are suspended, as happened to Ms. Nickler? Thank you for the question, Judge Miller. There is nothing in the record with regard to that question. But I would say again, if it's a lot or a little, all of that determination, however, now is subject to a Fourth Amendment analysis, as this court has provided, based upon the October 18 opinion. So whether it happens five times or a hundred times or one time or a thousand times, it's still now clear that the Fourth Amendment is going to apply in such circumstances. And so that's why I don't believe Ms. Nickler discussed, and that's part of the reason why they wished motion for leave, is that there had been no discovery involved in any of these cases. And interestingly enough, in that particular instance, the first time this case was before the district court, before it came up on the first appeal that remanded for that discrete issue, discovery had been stayed. And in the order from the court, which I believe is at page 60 of the record, I can give you the exact citation if that's incorrect. I'm going off memory, which is always dangerous. It said that all parties agreed that these questions were matters of law that could be decided without discovery. And so to the extent that Ms. Nickler now claims that she needed additional discovery to prove some facts, the record bears the opposite of that, pursuant to the magistrate judge's determination when they granted the stay request prior to determining the motion to dismiss the first time. I would also like to point out on the voluntary cessation doctrine, another key factual component with regard to that piece, and that is the fact that generally the concern with the voluntary cessation doctrine is that somebody has stopped doing a certain activity in order to stave off a lawsuit or to end a lawsuit. Here, the badge privileges were not reinstated until November 30th of 2016, which is a judicial admission and in the record in numerous places, as the court is aware. However, the lawsuit at issue here was filed in 2014, and it was actually filed after the letter that Mr. Kemp referenced in the record that Ms. Nickler references in the declaration. I believe that was a pre-lawsuit attempt to negotiate a resolution. This lawsuit was filed in August of 2014 and then amended later on. I'm sorry, filed in November of 2014. There has been nothing since this lawsuit that would indicate that they would take that position. Again, as pointed out, based upon this court's determination on October of 2018, they now have clear legal determination that Fourth Amendment would apply, which means that if this were to occur again under these highly unusual circumstances, Ms. Nickler would have the opportunity to seek monetary damages, which she was unable to obtain the first time based upon qualified immunity attaching to the actions of the defendants in this particular case. Moving on from the voluntary cessation. The point being, the badge privileges were not returned until two years after that lawsuit was filed. This isn't a situation where the defendants did something to try to get out of a lawsuit. At that point in time, they determined that the safety and security concerns that they had were no longer a concern based upon Ms. Nickler's track record and provided her badge privileges back. This wasn't a circumstance where they were trying to stave off a lawsuit by giving back her badge privileges and then snatched them back from her later on down the road. With regard to the motion to amend component of Ms. Nickler's lawsuit, there's just two brief points I would like to point out. And the first point is that the court pointed out at the first time that the case was dismissed, and footnote one on the first page, and this is in the record, that Ms. Nickler had not filed a motion for leave. They did argue in response to the motion to dismiss that a motion that leave should be provided, but no motion for leave was ever filed the first time before the case came up here. And the court pointed that out to them in the opinion. Also, the opinion was without prejudice, and certainly Ms. Nickler could have chosen to do additional investigation and refile at that point in time since it was without prejudice, but instead she chose to come before this court and seek this court's appellate determination, which is absolutely her right, but it doesn't give her a fourth bite of the apple now. I see that my time is over, so unless there's any questions for myself or Ms. Grames, we will sit down. Thank you. Okay, I have no questions. Judge Clifton? No, thank you. Hearing no questions, we'll thank you for your argument, Mr. Gilman. Mr. Kemp, I'm going to give you the full two minutes that you initially asked for for rebuttal because Mr. Gilman gives you lots of arguments to answer. Yes, thank you, Your Honor. The decision of this court in the previous appeal called for this to be remanded for factual development, and there's no way that factual development can take place if we don't have an opportunity to do discovery and to look at this. They kept doing this to Ms. Nickler for almost four years, and only after the lawsuit was filed did they stop. So there would be matters for discovery to determine exactly why that was and what aspects of this case may have played a role. But all that's left of your claim is a claim for injunctive relief, and so I don't really understand the point you're making, how it makes this case any less moot. Well, it's not moot because, again, I keep saying it, Your Honor, and I don't know that it is. Maybe I misunderstood the point you're trying to make now. I took that to be an effort to respond to why the case has to go on. If that's not what you're intending by this point, if you're trying to argue you should have leave to amend, then I withdraw the question, but I took that to mean a response to the mootness issue. Well, it is both. We should have a right to amend because she's never had a chance to amend. There's never been a response of pleading filed in the case. This case is at its absolute infancy procedurally, and she should be given that opportunity to pursue her money damages claims. She spent thousands of dollars in this, and now suddenly they just say it's moot. She hasn't been made a prevailing party. Was there a motion to amend filed? Say again? Was there a motion to amend filed? Not initially, not until it was remanded, but the cases do say that even in the absence of a motion, the court should still grant leave to amend. The cases that say that there should be a right to amend, especially in the Iqbal Twombly era where pleadings are given a lot more scrutiny, people are supposed to have the ability to go back and correct whatever deficiencies might be there, and that's what our amended complaint attempts to do. So throwing the case out and not giving her that opportunity is not consistent with this court's precedence, and we should have the opportunity to do that, and I think it was error on the district court's part to not grant that leave to amend. The motion was filed after the remand, and we did pursue it, and when you go through and you look at the foaming factors, there is no prejudice because it's still very early in the case. They've known about the case for a long time. The evidence should have been preserved. It's not futile. We've got claims that can be validly pursued. Mr. Kemp, if I could interject, please. You're over your extended time, and I won't cut you off in the middle of your sentence like the famous Chief Justice Rehnquist used to do, but I will ask you to finish your sentence. Add one more if you feel eloquent, and close your argument. I appreciate the court's indulgence. Thank you, Judge Gould. The rest of the sentence is just there's no undue delay, and there are none of the foaming factors that would militate against granting Ms. Nickler leave to amend in this case, and I'll leave it at that. Thank you, Your Honor. Thank you, counsel. I want to thank both counsel for their spirited arguments in this case, and the case of the Nickler case shall now be submitted, and the parties shall hear from us in due course. Thank you again and again for coming to make arguments remotely to us during the current crisis. It's much appreciated. Thank you, Your Honor.
judges: Gould, Clifton, Miller